UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| GROVE LUMBER & BUILDING SUPPLY, INC., | ) ) ) | SA CV 07-1396 AHS(RNBx) |
| | ) | FINDINGS OF FACT AND |
| Plaintiff, | ) ) | CONCLUSIONS OF LAW IN SUPPORT OF GRANTING ARGONAUT'S MOTION |
| v. | ) ) | TO STAY AND DENYING GROVE'S MOTION TO REMAND; ORDERS |
| ARGONAUT INSURANCE COMPANY, | ) ) | GRANTING STAY AND DENYING REMAND |
| Defendant. | ) | |

I.

**FINDINGS OF FACT**

After consideration of the papers of defendant Argonaut Insurance Company and plaintiff Grove Lumber & Building Supply, Inc., regarding Argonaut's motion to stay and Grove's motion to remand, and the proposed findings of fact and conclusions of law submitted by Argonaut and Grove, the Court finds that the following facts have been established.

1.    Plaintiff Grove Lumber & Building Supply, Inc., ("Grove")is a California corporation with its principal place of business located in Ontario, San Bernardino County, California.

1  (Not. of Removal, 3:1-3; Mot. to Remand, 3:12-14;

2  Compl., ¶1.)

3  2.   Defendant Argonaut Insurance Company is an

4  Illinois corporation ("Argonaut").  Since December 2006,

5  Argonaut's corporate headquarters has been located in Chicago,

6  Illinois.  Argonaut's administrative center is located in San

7  Antonio, Texas.

8  (Cutuli Decl., ¶3; Nienow Decl., ¶2, Exh. A; 1/18/08

9  Brands Decl., ¶2.)

10  3.   For calendar year 2006, Argonaut's revenues from

11  premiums totaled $111,117,748.  The top five states in terms of

12  such revenues for 2006 were New York ($17,589,508 or 15.83%),

13  Florida ($14,335,679 or 12.90%), Texas ($5,627,455 or 5.06%),

14  Connecticut ($5,626,335 or 5.06%), and Indiana ($5,273,716 or

15  4.75%).  California accounted for $470,732 in revenues (.42%),

16  37th in premium volume for calendar year 2006.

17  (Cutuli Decl., ¶6.)

18  4.   For calendar year 2007, Argonaut's revenues from

19  premiums through the third quarter totaled $121,019,810.  The top

20  five states in terms of such revenues for 2007 were New York

21  ($15,029,965 or 13.53%), Connecticut ($13,906,939 or 12.52%),

22  Texas ($7,736,651 or 6.96%), Florida ($5,006,379 or 4.51%), and

23  Indiana ($5,720,910 or 5.15%).  California accounted for

24  $4,897,653 in revenues (4.05%), 6th in premium volume through the

25  third quarter of calendar year 2007.

26  (Cutuli Decl., ¶7.)

27  5.   Argonaut has a total of 21 officers, distributed

28  as follows:  Texas (9), Illinois (5), California (3), Virginia

1  (1), Oregon (1), Maryland (1), and Virginia (1).

2          (Cutuli Decl., ¶4.)

3          6.   Argonaut leases offices in Chicago, San Antonio,

4  Dallas, Philadelphia, Scottsdale, Milwaukie (Oregon), Fresno,

5  Santa Ana, and Redwood City.  Argonaut has a total of 2 offices

6  in Texas and 3 offices in California.  One of the California

7  offices has two employees.  No other state has more than 1

8  office.

9          (Cutuli Decl., ¶9.)

10         7.   Argonaut has a total of 80 employees, distributed

11 as follows:  California (29 employees), Texas (28 employees),

12 Pennsylvania (8 employees), Illinois (5 employees), Arizona (3

13 employees), Oregon (2 employees), Georgia (2 employees),

14 Massachusetts (1 employee), Maryland (1 employee), and New Jersey

15 (1 employee).

16         (Cutuli Decl., ¶8.)

17         8.   The declaration of Ruth Cutuli establishes a

18 sufficient foundation for her personal knowledge of the facts

19 related in her declaration by virtue of her position as

20 Argonaut's Liability Claims Manager and her work with Argonaut's

21 Vice President and Chief Financial Officer, who is also located

22 in Argonaut's San Antonio, Texas, office.  Despite its objection,

23 Grove has also relied on the Cutuli Declaration in its proposed

24 statement of facts and conclusions of law.

25         (Cutuli Decl., ¶¶1, 2.)

26         9.   According to the U.S. Census Bureau, the

27 population of Texas as of 2000 was 20,851,820, compared with

28 California's population of 33,871,648.

1           (Argonaut's 1/10/08 Req. Jud. Not., Exhs. 1 and 2.)

2               10.   In its complaint, Grove alleges that Argonaut

3 issued to Grove as named insured three policies of workers'

4 compensation insurance for the policy periods 5/1/03-5/1/04,

5 5/1/04-5/1/05, and 5/1/05-5/1/06.

6           (Compl., ¶7, Exhs. A, B, and C.)

7               11.   Under the terms of Grove's workers' compensation

8 policies, Argonaut promised to "pay promptly when due the

9 benefits required of you by the workers compensation law."   The

10 policies include deductibles of $250,000.   The policies  provide

11 that Grove agrees to reimburse Argonaut, up to the amount of the

12 applicable deductible, for Argonaut's payment of workers-

13 compensation benefits, as well as the cost of adjusting claims.

14 Thus, payment by Argonaut of amounts within the deductible are

15 treated as an advancement of funds by Argonaut to Grove "and

16 shall create a legal obligation for reimbursement, and may be

17 secured by appropriate security."   The deductible endorsement

18 also states that it "does not affect or alter the rights of

19 others under the policy."

20           (Compl., Exh. A, Form WC 00 00 00 A (04-92), p. 1; Form

21 WC 99 06 25 (04-91), pp. 1, 4.)

22               12.   Each policy states that "this policy, including

23 all endorsements forming a part thereof, constitutes the entire

24 contract of insurance.   No condition, provision, agreement, or

25 understanding not set forth in this policy or such endorsements

26 shall affect such contract or any rights, duties, or privileges

27 arising therefrom."   Additionally, the policies state that "[t]he

28 only agreements relating to this insurance are stated in this

policy.   The terms of this policy may not be changed or waived
except by endorsement issued by us to part of this policy."

> (Compl., Exh. A, Form WC 00 00 00 A (04-92), Form WC 04
> 03 01 A, p. 2].)

13.   Grove and Argonaut entered into a contract called
an "Insurance Program Agreement" (or "IPA") effective May 1,
2004.   The Insurance Program Agreement states that it "does not
change any of the terms or conditions of the Policies or of our
obligations or duties spelled out in the Policies."   Two
schedules were attached to the Insurance Program Agreement.   Like
the IPA, the schedules each state that if there is a conflict
between the schedule and the policies, then the policies will
govern.   Grove's Accounting Manager, Dena Mills, signed the
Insurance Program Agreement and the two schedules on behalf of
Grove.

> (12/6/07 Brands Decl., Exh. A, IPA, p.1, Schedule 1,
> pp. 1, 7, Schedule 2, pp. 1, 5.)

14.   Article I of the IPA sets forth the payments that
Grove is required to make, including the premium, paid losses
within the deductible, and loss-adjustment expenses.   Article II
establishes a "Loss Deposit Fund," from which policy benefits and
loss-adjustment expenses are paid, and which is adjusted monthly
based upon loss history.   Article IV requires Grove to post
collateral to secure its obligations under the IPA.   Each
schedule to the IPA designates Argonaut claims personnel to
adjust claims made under the policies.

> (12/6/07 Brands Decl., Exh. A, IPA, pp.1-5, Schedule 1,
> p. 6, Schedule 2, p. 4.)

1        15.   The Insurance Program Agreement also states in

2   relevant part as follows:

3        **ARTICLE VII.   ARBITRATION**

4        A.   Submission to Arbitration: - You and we agree to

5             arbitrate any dispute over the interpretation,

6             application, formation, enforcement or validity of

7             this Agreement or any other agreement between you

8             and us, or your sand our rights with respect to

9             transaction involved, whether such dispute arises

10            before or after termination of this Agreement.

11       B.   Sole Remedy: - You and we agree that arbitration

12            is the sole remedy for the resolution of disputes

13            between us.  The board of arbitration will have

14            complete and exclusive jurisdiction over the

15            entire matter in dispute, including any question

16            as to its arbitrability.

17       C.   Initiation of Arbitration: - Either you or we may

18            initiate arbitration by sending a notice to the

19            other identifying the one requesting arbitration,

20            giving the name of a contact person to whom all

21            communications are to be addressed, identifying

22            the one against whom arbitration is being

23            initiated.

24       D.   Arbitration Board Membership: - The arbitration

25            will be held in Stamford, Connecticut before a

26            board of two arbitrators and an umpire meeting.

27            The members of the arbitration board will have the

28            following qualifications:  each is to be a

disinterested active or retired officer of an
insurance or reinsurance company, broker, agency,
claims or claims adjuster or lawyer, with at least
ten (10) years of experience within the insurance
or reinsurance industry.

J.   Law: - The Arbitration shall be governed by the
United States Arbitration Act, Title 9 U.S.C. §1,
et seq.

**ARTICLE X.   MISCELLANEOUS TERMS**

A.   APPLICABLE LAW:  THE RIGHTS OF THE PARTIES TO THIS
AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN
ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK
WITHOUT REGARD TO NEW YORK'S RULES ON CONFLICT OF
LAW.

J.   Jurisdiction: - For the purposes of enforcing the
terms of ARTICLE VII and confirming any arbitral
award, you and we consent to the exclusive
jurisdiction of either the U.S. District Court for
the Southern District of New York or the Supreme
Court of the State of New York, County of New
York.

(12/6/07 Brands Decl., Exh. A, IPA, pp. 6, 8, 10.)

16.  Grove filed this action against Argonaut in Orange
County Superior Court, Action No. 07 CC01401, on October 31,
2007.  Grove's complaint alleges that Argonaut paid claim
benefits within the policies' deductibles, and Grove reimbursed
Argonaut for such payments "by way of a deposit account required
by and maintained by" Argonaut.  To replenish the deposit

account, Argonaut allegedly billed and continues to bill Grove monthly or quarterly for payments within the deductibles.  Grove alleges that Argonaut "mishandled, overpaid and over[-]reserved claims," which, "because of the nature of the Large Deductible policies, . . . directly caused monetary damages . . . on a dollar for dollar basis" and "artificially increase[d]" Grove's premium.

(Compl., ¶¶10, 20.)

17.  The complaint also alleges that Argonaut required Grove to deliver a letter of credit as security for Grove's obligations.  Grove alleges that there was a custom and practice for Argonaut to "review the amount of the [letter of credit] at least annually to determine the reasonableness of the letter of credit for all policies and all policy periods."  Argonaut's alleged improper claim handling has "artificially increase[d] the amount of collateral" required by Argonaut.

(Compl., ¶¶10, 11, 19.)

18.  Grove's complaint alleges claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of Cal. Bus. & Prof. Code § 17200.

19.  On December 4, 2007, Argonaut removed the lawsuit to this Court.

20.  On December 5, 2007, Argonaut's counsel, on behalf of Argonaut, sent a letter to Grove's counsel demanding arbitration under the Insurance Program Agreement.

(Nielsen Decl., ¶4, Exh. B.)

21.  On December 6, 2007, Grove's counsel rejected

1  Argonaut's arbitration demand.

2          (Nielsen Decl., ¶4, Exh. C.)

3          22.  On December 7, 2007, Argonaut filed a petition in

4  the Supreme Court of the State of New York, County of New York,

5  to compel arbitration with Grove under the Insurance Program

6  Agreement.

7          (Nielsen Decl., ¶4, Exh. D.)

8          23.  On December 11, 2007, Argonaut filed a motion to

9  stay or dismiss this action on the basis that Grove is required

10 to arbitrate the disputes in the complaint pursuant to the

11 Insurance Program Agreement, and because the IPA's forum-

12 selection clause calls for legal proceedings to compel

13 arbitration to be conducted in New York.  Argonaut alternately

14 requested that the Court order arbitration be conducted within

15 this judicial district, or that the Court transfer this action to

16 the District of Connecticut or the Southern District of New York

17 for further proceedings to compel arbitration.

18         24.  On December 14, 2007, Grove filed a motion to

19 remand this action on the basis that the Court lacks diversity

20 jurisdiction because Grove and Argonaut are both California

21 citizens.  Argonaut opposed Grove's motion on the basis that it

22 is an Illinois corporation with principal places of business in

23 either Illinois or Texas, and, thus, the parties are diverse.

24 Neither Grove nor Argonaut contends that the amount in

25 controversy is less than $75,000.

26 //

27 //

28 //

# II.

## CONCLUSIONS OF LAW

1.   Diversity jurisdiction is tested at the time of the filing of a petition for removal.  *Littlefield v. Continental Cas. Co.*, 475 F.Supp. 887, 889 (C.D. Cal. 1979).  Argonaut has established diversity jurisdiction by a preponderance of the evidence.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

2.   This action is not a "direct action against the insurer of a policy or contract of liability insurance" under 28 U.S.C. § 1332(c)(2), because Grove has sued Argonaut for its own alleged misconduct.  *Searles v. Cincinnati Ins. Co.*, 998 F.2d 728, 730 (9th Cir. 1993); *Beckham v. Safeco Ins. Co. of America*, 691 F.2d 898, 902 (9th Cir. 1982).

3.   The amount in controversy exceeds $75,000.  The Court has subject matter jurisdiction over this action by virtue of the parties' diversity of citizenship.  28 U.S.C. §§ 1332(a), 1441(b).  Grove is a citizen of California, where Grove is incorporated and has its principal place of business.  Argonaut is not a citizen of California because:

> (a)   Argonaut is an Illinois corporation,
>
> (b)   Argonaut is a citizen of Texas, if any one state, under the "place of operations" test; *Industrial Techtonics, Inc. v. Aero Alloy*, 902 F.2d 1090, 1093, 1094 (9th Cir. 1990) (under the "place of operations" test, the principal place of business is the "state which contains a substantial predominance of corporate operations," but this

test should not be used where "no state contains a substantial predominance of the corporation's business activities"); *Ho v. Ikon Office Solutions*, 143 F.Supp.2d 1163, 1166-1167 (N.D. Cal. 2001) (no substantial predominance of business activity in any one state where 7.9% of revenue generated in California, 5.4% in Texas and 5.3% in Florida, with remaining revenue widely distributed among the states); and,

(c)     Argonaut is a citizen of either Illinois or Texas under the "nerve center" test; *Danjaq v. Pathe Communications*, 979 F.2d 772, 776 (9th Cir. 1992) ("The 'nerve center' approach looks to the corporation's headquarters as the principal place of business"); *Industrial Techtonics, Inc. v. Aero Alloy*, 902 F.2d 1090, 1092 (9th Cir. 1990) (under the nerve-center test, a "corporation's principal place of business is where its executive and administrative functions are performed").

4.     Because Argonaut is not a California citizen under any of the applicable tests of citizenship, there is not an uncertainty that must be resolved in favor of remand. *Herman v. Saloman Smith Barney, Inc.*, 266 F.Supp.2d 1208, 1210 (S.D. Cal. 2003).

5.     Argonaut's allegation in prior litigation styled *Argonaut Ins. Co. v. Gulf Ins. Co.*, U.S. Dist. Ct., C.D. Cal. No. CV05-5568 JVS (SSx), that Argonaut was a California corporation, is not a judicial admission in this action. *Kohler v. Leslie*

*Hindman, Inc.,* 80 F.3d 1181, 1185 (7th Cir. 1996) ("a statement made in one lawsuit cannot be a judicial admission in another"); *Fibreboard Paper Prod. Corp. v. East Bay Union of Machinists, Local 1304*, 227 Cal.App.2d 675, 708 n. 8, 39 Cal.Rptr. 64 (1964) (same). Even if the earlier allegation were an evidentiary admission, Argonaut has presented unrebutted evidence to correct it. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 860 (9th Cir. 1995) (district courts must give due consideration to evidence in subsequent pleadings that corrects prior error).

6. The doctrine of judicial estoppel does not apply to Argonaut's prior mistaken allegation because the parties in the prior litigation would have been diverse regardless of the error, so that the prior court was not misled about diversity, Argonaut did not "achieve an unfair advantage," and there was no "adverse impact on the judicial process." *United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 563 (9th Cir. 2008); *Golden Eagle Corp. v. Cen-Fed, Ltd.*, 148 Cal.App.4th 976, 992, 56 Cal.Rptr.2d 279 (2007); *International Billing Servs. v. Emigh*, 84 Cal.App.4th 1175, 1191, 101 Cal.Rptr.2d 532 (2000).

7. Venue is proper in this Court because Grove brought this action in Orange County Superior Court. 28 U.S.C. §1441(a).

8. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, ___ U.S. ___, 128 S.Ct. 978, 981, 169 l.Ed.2d 917, 923 (2008). The FAA rests upon Congress's authority under

1  the Commerce Clause.  (128 S.Ct. at 981, 169 L.Ed.2d at 923.)

2  The business of insurance is "commerce" within the meaning of the

3  Commerce Clause.  *United States Department of the Treasury v.*

4  *Fabe*, 508 U.S. 491, 499-500, 113 S.Ct. 2202, 124 L.Ed.2d 449

5  (1993); *United States v. South-Eastern Underwriters Assn.* 322

6  U.S. 533, 549-550, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944).

7         9.   Section 2 of the FAA states as follows:

8         A written provision in any . . . contract

9         evidencing a transaction involving commerce

10         to settle by arbitration a controversy

11         thereafter arising out of such contract or

12         transaction . . . shall be valid,

13         irrevocable, and enforceable, save upon such

14         grounds as exist at law or in equity for the

15         revocation of any contract.

16  9 U.S.C. § 2.  The FAA "supplies not simply a procedural

17  framework applicable in federal courts; it also calls for the

18  application, in state as well as federal courts, of federal

19  substantive law regarding arbitration."  *Preston*, 128 S.Ct. at

20  981, 169 L.Ed.2d at 923, citing *Southland Corp. v. Keating*, 465

21  U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

22        10.   Under the FAA, "attacks on the validity of an

23  entire contract, as distinct from attacks aimed at the

24  arbitration clause, are within the arbitrator's ken."  *Preston*,

25  128 S.Ct. at 984, 169 L.Ed.2d at 925, citing *Prima Paint Corp. v.*

26  *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404, 87 S.Ct. 1801,

27  18 L.Ed.2d 1270 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*,

28  546 U.S. 440, 445-446, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038

1  (2006) (respondents' assertion that a loan contract containing an

2  arbitration provision was illegal and unenforceable because it

3  violated consumer-protection laws must be "considered by an

4  arbitrator, not a court," because "regardless of whether the

5  challenge is brought in federal or state court, a challenge to

6  the validity of the contract as a whole, and not specifically to

7  the arbitration clause, must go to the arbitrator").

8      11.  Grove's assertions that the entire Insurance

9  Program Agreement is void and unenforceable because it was not

10  approved by the Department of Insurance under Cal. Ins. Code §

11  11658(a) and 10 California Code of Regulations § 2018(a), because

12  it is contrary to an integration clause in the policies, and

13  because it modifies "core obligations and duties" under the

14  workers' compensation policies, concern the validity of the

15  entire contract rather than just the arbitration clause.  These

16  issues must be decided by the arbitration panel in the first

17  instance.  *Preston*, 128 S.Ct. at 984, 163 L.Ed.2d at 925;

18  *Buckeye*, 546 U.S. at 449; *Prima Paint*, 388 U.S. at 403-404.

19      12.  Resolution of the question of arbitrability by the

20  arbitration panel in the first instance will not violate the

21  McCarren-Ferguson Act, 15 U.S.C. § 1012(b), which states in

22  relevant part that "[n]o Act of Congress shall be construed to

23  invalidate, impair, or supersede any law enacted by any State for

24  the purpose of regulating the business of insurance . . . unless

25  such Act specifically relates to the business of insurance . . ."

26  Cal. Ins. Code § 11658(a), cited by Grove, does not address the

27  topic of arbitration or provide a procedural framework for

28  resolution of disputes.  Therefore, the procedural framework

1    under §2 of the FAA does not invalidate, impair, or supersede

2    Cal. Ins. Code § 11658(a), or any other California statute

3    governing the business of insurance.

4          13.   *Imbler v. PacifiCare of Calif., Inc.* 103

5    Cal.App.4th 567, 571-576, 126 Cal.Rptr.2d 715 (2002), which Grove

6    cites, does not alter the Court's conclusion that the FAA

7    requires the arbitration panel to resolve the question of

8    arbitrability in the first instance.  *Imbler* held that, under the

9    McCarren-Ferguson Act, the FAA cannot preempt Cal. Health &

10   Safety Code § 1363.1, which specifically addresses the

11   requirements for enforcement of an arbitration clause in a

12   "health care service plan."  The IPA and workers' compensation

13   policies are not "health care service plans" under Cal. Health &

14   Safety Code § 1345(f).  And the Knox-Keene Act, Cal. Health &

15   Safety Code §§1340-1399, does not apply to Argonaut.  *See,* Cal.

16   Health & Safety Code § 1343(e)(1) (the Knox-Keene Act does not

17   apply to insurers unless they are "directly providing the health

18   care service through those entity-owned or contracting health

19   facilities and providers . . .")

20         14.   Contrary to Grove's contention, the January 18,

21   2008, order in *Ceradyne, Inc. v. Argonaut Ins. Co.*, Orange County

22   Superior Court No. 07 CC 01316, is not binding because Argonaut

23   has appealed from the order, which is thus not final.  "Whether a

24   prior state court judgment precludes relitigation of an identical

25   claim in federal court depends on the preclusion rules of the

26   state."  *Gupta v. Thai Airways Int'l, LTD*, 487 F.3d 759, 766 (9th

27   Cir. 2007).  Under California law, "a judgment is not final for

28   purposes of collateral estoppel while open to direct attack,

1  e.g., by appeal." *Abelson v. National Union Fire Ins. Co.*, 28

2  Cal.App.4th 776, 787, 35 Cal.Rptr.2d 13 (1994).

3          15.   To the extent that Grove's position is construed

4  as an attack on the arbitration clause alone, Grove has not

5  established that the clause is legally void because Argonaut had

6  no duty to obtain approval from the Department of Insurance for

7  Argonaut's Insurance Program Agreement.  Grove concedes in its

8  proposed statement of facts and conclusions of law, at 7:19-21,

9  that the IPA is a "financial agreement" and not an insurance

10  policy or endorsement.  Moreover, Cal. Ins. Code § 11568(a), upon

11  which Grove relies, applies to insurance policies and

12  endorsements.  The Insurance Program Agreement is not an

13  insurance policy or endorsement because it does not address

14  Argonaut's indemnity obligations for loss or liability.  Cal.

15  Ins. Code § 22 ("Insurance is a contract whereby one undertakes

16  to indemnify another against loss, damage, or liability arising

17  from a contingent or unknown event"), § 109 ("Workmen's

18  compensation insurance includes insurance against loss from

19  liability imposed by law upon employers to compensate employees

20  and their dependents for injury sustained by the employees

21  arising out of and in the course of the employment, irrespective

22  of negligence or of the fault of either party"), and § 380 ("The

23  written instrument, in which a contract of insurance is set

24  forth, is the policy"); *see also Title Ins. Co .v State Bd. Of*

25  *Equalization*, 4 Cal.4th 715, 725, 44 Cal.Rptr.2d 822 (1992) (in

26  deciding whether a contract constitutes an insurance policy,

27  courts must "ask whether [the assumption of risk] or something

28  else to which it is related in the particular plan is its

principal object and purpose"). *See, e.g., St. Paul Fire & Mar. Ins. Co. v. Courtney Enterprises*, 270 F.3d 621, 625 (8th Cir. 2001) (insurer is not required to obtain approval for an arbitration clause in a claim-handling contract outside of a policy because "Texas insurance laws, if applicable in this way, are not impaired by the agreement to arbitrate"). *Robertson v. Health Net of Calif., Inc.*, 132 Cal.App.4th 1419, 34 Cal.Rptr.3d 547 (2005) and *Malek v. Blue Cross of Calif.*, 121 Cal.App.4th 44, 16 Cal.Rptr.3d 687 (2004), upon which Grove relies to attack the validity of the IPA, are inapposite because, like *Imbler*, *Robertson* and *Malek* struck down arbitration clauses that violated Cal. Health & Safety Code § 1363.1, which does not apply to the IPA or to Argonaut.

16.   As Grove agrees, at least some of the claims raised by its complaint against Argonaut are within the class of disputes subject to the arbitration clause.  This is consistent with the breadth of the arbitration language.  *See, e.g., Southland*, 465 U.S. at 16 n. 7 (language requiring arbitration of "'any controversy or claim arising out of or relating to this Agreement or the breach hereof'" is broad enough to cover claims for fraud, oral misrepresentation, breach of contract, breach of fiduciary duty, and violation of California Franchise Investment Law).  The IPA states that arbitration is the "sole remedy for the resolution of disputes" between Argonaut and Grove.  While Grove's claims implicate Argonaut's obligations under the workers' compensation policies, Grove's alleged claims and damages arise from its duties under the IPA to reimburse Argonaut for paid losses, to replenish the Loss Deposit Fund from which

policy benefits and loss-adjustment expenses are paid, and to post collateral to secure Grove's obligations under the IPA. Cal. Ins. Code §§ 11654 and 11735(e)(2), which Grove cites as requiring Argonaut to pay workers' compensation benefits to claimants under the policies, do not contradict that Grove's claims arise from its duties to Argonaut under the IPA. Similarly, *Notrica v. State Compensation Insurance Fund*, 70 Cal.App.4th 911, 83 Cal.Rptr.2d 89 (1999), *Desai v. Farmers Ins. Exch.*, 47 Cal.App.4th 1110 (1996), *Security Officers Service, Inc. v. State Compensation Ins. Fund*, 17 Cal.App.4th 887, 21 Cal.Rptr.2d 653 (1993), and *Hughes v. Blue Cross of N. Calif.*, 215 Cal.App.3d 832, 848, 263 Cal.Rptr. 850 (1989), which Grove cites, do not address the enforceability of an arbitration clause and only describe circumstances under which an insurer might be found liable for breach of the covenant of good faith and fair dealing.

    17.   Under § 4 of the FAA, the Court may order that arbitration be conducted within the Central District of California notwithstanding that the arbitration clause in the Insurance Program Agreement calls for arbitration in Connecticut. *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 784-785 (9th Cir. 2001) ("§4 confines the arbitration to the district in which the petition to compel is filed.  It does not require that the petition be filed where the contract specified that arbitration should occur").  Rather than ordering arbitration, the Court concludes that this action should be stayed.

    a.   First, section 3 of the FAA provides that a court in an action "upon any issue referable to arbitration under an

agreement in writing for such arbitration the court in which such

suit is pending, upon being satisfied that the issue involved in

such suit or proceeding is referable to arbitration under such an

agreement, shall on application of one of the parties stay the

trial of the action until such arbitration has been had in

accordance with the terms of the agreement . . .". 9 U.S.C. § 3.

        b.   Second, a stay is appropriate under the parties'

agreement to submit to the "exclusive jurisdiction of either the

U.S. District Court for the Southern District of New York or the

Supreme Court of the State of New York, County of New York" for

the purpose of enforcing the terms of the arbitration provision.

This is a mandatory forum-selection clause requiring legal

proceedings relating to enforcement of the arbitration clause to

take place in New York. *Docksider, Ltd. v. Sea Technology, Ltd.*,

875 F.2d 762, 764 (9th Cir. 1989). Enforcement of a forum-

selection clause is unreasonable only "(1) 'if the inclusion of

the clause in the agreement was the product of fraud or

overreaching'; (2) 'if the party wishing to repudiate the clause

would effectively be deprived of his day in court were the clause

enforced'; and (3) 'if enforcement would contravene a strong

public policy of the forum in which suit is brought.'" *Murphy v.*

*Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003)

(citation omitted). Notwithstanding its assertions that it has

no "connection" to Connecticut or New York and that Argonaut's

documents are located in California, Grove has presented no

evidence demonstrating that enforcement of the forum-selection

clause would be unreasonable. Nor has Grove provided any legal

authority prohibiting a forum-selection clause in a contract

1    between an insured and a workers' compensation insurer.

2           c.    Third, a stay is appropriate because it will allow

3    the proceeding commenced by Argonaut in New York to compel

4    arbitration to proceed.  *Ass'n of Irritated Residents v. Fred*

5    *Schakel Dairy*, 460 F.Sup.2d 1185, 1193 (E.D. Cal. 2006) ("A stay

6    is appropriate when a similar action is pending in another court

7    (whether state or federal) or when arbitration may be

8    appropriate").

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

**III.**

**ORDERS**

The Court, having fully considered the moving and opposing papers concerning the motion of defendant Argonaut Insurance Company for stay or other relief and the motion of plaintiff Grove Lumber Company, Inc., to remand, and based upon the Court's findings of fact and conclusions of law, orders as follows:

1. Grove's motion to remand is denied.

2. Argonaut's motion for stay is granted, pending a decision on Argonaut's New York petition to compel arbitration and any subsequent arbitration proceedings.

3. The Court finds the remainder of Argonaut's motion to be moot and therefore denies the remainder.

4. Any current deadlines and dates in this matter are vacated. The parties are directed to file with the Court a joint report regarding the status of the New York proceeding within 90 days of the date of this order.

The Clerk shall serve this order on counsel for all parties in this action.

IT IS SO ORDERED.

Dated: July 7, 2008.

ALICEMARIE H. STOTLER
_____
ALICEMARIE H. STOTLER
CHIEF UNITED STATES DISTRICT JUDGE